IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEON FOY, 125322 | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 2:05-CV-946-F |
| | ) | |
| BOB RILEY, ET AL., | ) | |
| | ) | |
| Defendants | ) | |

EXHIBIT B

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared one Willie J. Thomas, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Willie J. Thomas, and I am presently employed as a Warden III with the Alabama Department of Corrections, Elmore Correctional Facility, in Elmore, Alabama. I am over twenty-one years of age.

The plaintiff alleges in the Complaint that male and female inmates in the State of Alabama are at a "substantial risk of serious injuries and death due to the outrageously overcrowded and dangerous conditions in which they are forced to live at Elmore CF and Julia Tutwiler Prison" (for Women). This affidavit addresses conditions at Elmore CF, where I was appointed as the Warden III in February 2005. There have been 0 assaults at Elmore during the current fiscal year. During the previous fiscal year there were 14 assaults through the twelve month period. The definition for assault in the ADOC is any willful attempt *or threat* (emphasis added) to inflict injury upon another person giving the victim reason to fear or expect bodily harm. It should be noted that an incident is labeled as an *assault* whenever a

"principal aggressor" is identified during a fight. Additionally, an incident identified as *assault* does not imply the seriousness of the incident, extent of injury, or even whether an injury occurred. One inmate simply pushing another person or spitting on another person may be labeled as an *assault*, for example.

There is no dispute that prisons in the state of Alabama are crowded. I do, however, take issue with the allegation made by the plaintiff that the conditions are unconstitutional based on the overcrowding. The "extreme tension" due to decreased living space and the resultant fights alleged by the plaintiff do not exist. The "potential" for violence in Alabama prisons referenced by the plaintiff does exist, and certainly exists in all prisons and jails. However, the crowded conditions have not resulted in an openly violent and dangerous environment. Assaults and fights are no more frequent now than they were years ago when the number of inmates was substantially lower. Maintenance of existing structures, sound classification of inmates, training, and staff that are truly dedicated to preserving order and protection of the public has resulted in a prison system that is certainly within Constitutional parameters. Inmates with a demonstrated propensity for violence are classified accordingly, and segregated from other inmates.

There has been no "major outburst of staph infections, hepatitis C, and tuberculosis at Elmore CF" as alleged by the Plaintiff. Isolated instances of staph infections have occurred, and the involved inmates have been appropriately treated. Additionally, protective measures, including special laundering of clothing and linen, are taken at the time a case of staph infection is reported or detected.

The Plaintiff is correct that Elmore CF was originally designed for 600 inmates. It was originally named Staton Annex, originating in 1981 with modular housing units as dormitories and a designed capacity of 600 inmates. In 1991, three dormitories were constructed for permanency, and the operational capacity increased to 196 inmates per dorm.

Additionally, a new kitchen was added to the dining hall and the old kitchen was renovated into the current Administrative Building. While the operational capacity has almost doubled, modification of the housing arrangement was implemented to accommodate the additional inmates. Elmore CF's dormitories are double-bunked throughout, which is standard practice in a correctional environment. Correctional Officers are assigned to each "bay" of a dormitory. There are two "bays" in each dormitory.

There is no designated hospital facility on site at Elmore CF. A licensed nurse conducts "sick call screening" each weekday morning at the institution. Inmates who need to see the physician or other medical provider are transported to the Staton Health Care Unit to receive further treatment. There is a pill room at the institution where physician-prescribed medication is dispensed three times daily to the inmate population by appropriately licensed nursing staff. The health care unit at Staton Correctional Center is utilized by Elmore CF for medical and dental needs. Staton CC is less than one mile from Elmore CF. Daily movement of inmates occur as needed so that *full access to the medical facility* is accomplished without delay. An emergency movement to Staton's health care unit can be accomplished in minutes, providing much faster access than most civilians have to health care providers. Necessary medical treatments or procedures that cannot be accommodated on site at the Staton Health Care Unit are handled by civilian providers.

The seating capacity in the Elmore CF dining hall is adequate to accommodate the inmates assigned. The entire population is fed in less than 1 ½ hours for each meal, of which three meals are provided daily (two on Sunday/state holidays). The meals are served in accordance with the "Master Menu", which is provided by a registered dietician for all ADOC institutions. All recognized nutritional guidelines are met. During my tenure at Elmore CF, I have received very few complaints concerning the meals that are provided. The kitchen preparation and dining area is maintained in a satisfactory manner (last

inspection by the Alabama Department of Public Health yielded a score of 92). Appropriate hygiene, proper temperatures, food handling techniques, and attention to the potential of "food-borne illnesses" are stressed by the *5 full-time civilian Kitchen Stewards* at the institution. As a result, I have no knowledge of a "food-borne illness" at this institution. Inmates with communicable illnesses are *not* allowed to work in the kitchen. Additionally, a licensed pest control company is contracted by the institution for pest and vermin eradication. The company provides monthly servicing plus responds to handle special issues as needed. The contracted company has been extremely effective in discharging their responsibilities in accordance with the contract.

Relative to the Plaintiff's claim that rates for phone charges are too high is outside the boundary of my control. I have no knowledge of the rate charged for inmate telephone calls and the institution has no control over the rate.

Inmates are classified and assigned based on many factors, such as type of conviction, past violence, disciplinary history, enemy situations, medical and psychological factors, and perceived institutional or public risk. Age is not necessarily a factor, except those that require special attention that are housed at the Hamilton Aged and Infirmed institution. The classification process is based on an instrument/process that has been accredited by the National Institute of Corrections. The professional judgment of full-time Classification Specialists and Classification Supervisors also ensure appropriate classification of ADOC inmates. The classification process also incorporates the professional judgment of a multidisciplinary team (classification committee) which includes the Warden/Designee, Psychologist, Classification Specialist, and a Classification Supervisor. Recommendations provided by this committee are thoroughly reviewed by ADOC Central Classification for final approval of all custody and institutional assignment decisions.

Adequate ventilation, personal safety and security, and basic needs are met in the present manner at this institution. While I would like to see the inmate to correctional officer ratio improve (more staff and/or fewer inmates), the present numbers provide acceptable coverage. The ADOC is presently recruiting heavily, sponsoring job fairs, and utilizing overtime to meet this situation.

Seasonally-appropriate clothing is provided by the ADOC to the inmates at no cost to the inmate.

When inmates have complaints, administrative remedy does exist via verbal and written requests. Grievance or Complaint forms are available via the contracted medical provider to address medical complaints.

Inmates are accepted into the state system from the County jails via authorization from Transfer Agent Division. I have no control over this aspect of the Plaintiff's complaint.

I deny that I have violated any of the plaintiffs' Constitutional rights.

_____
Warden III Willie Thomas
Elmore Correctional Facility

STATE OF ALABAMA
ELMORE COUNTY

SWORN TO AND SUBSCRIBED BEFORE ME AND GIVEN UNDER MY HAND AND OFFICIAL SEAL THIS THE ____ 1st ____ DAY OF ___December___, 2005.

_____
NOTARY PUBLIC

My Commission Expires: 3-24-08